J. A33012/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF FRANK C. NICHOLAS AND ELIZABETH S. NICHOLAS | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| THE CUTLER GROUP, INC., | : : | No. 762 EDA 2015 |
| Appellant | : | |

Appeal from the Order Entered February 9, 2015,
in the Court of Common Pleas of Bucks County
Civil Division at No. 2007-03238

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 18, 2016**

The Cutler Group, Inc. ("Cutler"), appeals from the order of the Court of Common Pleas of Bucks County that entered judgment against Cutler and in favor of the Estate of Frank C. Nicholas[1] and Elizabeth S. Nicholas in the amount of $634,490.45 plus interest in the amount of six percent per annum calculated from June 6, 2014, through November 18, 2015.

On June 6, 2002, Frank C. Nicholas and Elizabeth S. Nicholas ("the Nicholases") and Cutler, a real estate developer, entered into a written

---

* Retired Senior Judge assigned to the Superior Court.

[1] On June 19, 2009, Frank C. Nicholas died.  Mr. Nicholas' counsel filed a "Substitution of Successor for Plaintiff, Frank C. Nicholas" pursuant to Pa.R.C.P. 2352.  The Estate of Frank C. Nicholas replaced Frank C. Nicholas as a party.

agreement ("Land Sale Agreement") for the purchase and sale of 323.956 acres of land owned by the Nicholases in Hilltown Township, Bucks County, Pennsylvania. Pursuant to an ancillary agreement entered into at the same time, Cutler conveyed back to the Nicholases five parcels within the 323.956 acres along with the buildings already erected on the five parcels. The ancillary agreement contained a valuation guaranty ("Valuation Guaranty") that provided that if the Nicholases received a bona fide offer on any of the five parcels and the sale price for the parcel was less than the agreed upon fair market value, Cutler had the right of first refusal to purchase the parcel at the same terms as those contained in the bona fide third party purchaser agreement of sale. Cutler had ten days to exercise the right of first refusal after it received the sales agreement from the Nicholases. If Cutler failed to exercise the right of first refusal, it was obligated to pay to the Nicholases the difference between the amount received from the sale to the third party purchaser and the valuation of the property in the Valuation Guaranty, if the third party amount was less. According to the Valuation Guaranty, Walden, one of the parcels, was valued at $943,000 with a provision that it would increase in value five percent annually from the date of settlement until the date of payment. The parties later stipulated that Walden's value according to the Valuation Guaranty was $1,058,097.08.

On July 28, 2004, the Nicholases conveyed the land to Cutler under the Land Sale Agreement. At the time, Cutler was represented by Richard P. McBride, Esq. ("Attorney McBride").

On March 23, 2006, Frank C. Nicholas and his realtor, Gina McCleary ("McCleary"), met with Attorney McBride to inform him that the Nicholases intended to sell Walden. McCleary forwarded the listing presentation for Walden to Attorney McBride in March 2006. The listing presentation contained the listing price, comparable sales, and the marketing strategy. Walden was marketed for sale and listed in the Multi-Listing Service. A "For Sale" sign was displayed at Walden, and open houses were held almost every weekend. Walden was located in the area of the construction of Cutler's new development.

The Nicholases entered into an agreement for the sale and purchase of Walden with Christopher J. Hill and Megan Macauley (collectively, "Hill and Macauley") in October 2006 in the amount of $619,000. On November 20, 2006, Stephen P. Moyer, Esq. ("Attorney Moyer"), attorney for the Nicholases, sent a letter to Attorney McBride by UPS Next Day Delivery. The letter advised Attorney McBride and Cutler that the Nicholases had received a bona fide offer for Walden, included a copy of the sales agreement, and directed Attorney McBride to the provision in the Valuation Guaranty regarding Cutler's right of first refusal. The letter arrived at Attorney McBride's office on November 21, 2006. At some point, Attorney McBride

provided the letter to Cutler, but Cutler did not respond. At the time, Attorney McBride's office was in the same building as Cutler, and in fact, Attorney McBride leased his office space from Cutler.

The Nicholases and Hill and Macauley agreed orally to extend the closing date to allow Hill and Macauley to secure financing. On December 1, 2006, Attorney Moyer sent another letter to Attorney McBride by fax and regular mail which provided:

> I had forwarded to you a letter dated November 20, 2006 in connection with the above-referenced property.
>
> Since I have not heard from you with regard to that letter I am proceeding on the basis that The Cutler Group, Inc. has elected not to exercise its right of first refusal as set forth in Paragraph 5 of the Agreement between the parties dated June 6, 2002.
>
> Accordingly, Mr. and Mrs. Nicholas will be proceeding to settlement on this property in accordance with the terms and conditions of the Agreement of Sale with Christopher J. Hill and Megan Macauley, a copy of which was provided to you by my letter of November 20, 2006.

Letter of Stephen P. Moyer, 12/1/06 at 1.

Attorney McBride transmitted this letter to Cutler. Cutler did not respond. The Nicholases and Hill and Macauley completed the sale of Walden on December 6, 2006. On December 8, 2006, Attorney Moyer sent another letter to Attorney McBride to inform him that the settlement had taken place and that Cutler had 30 days from December 6, 2006 to make payment. Cutler did not pay the difference between the value ascribed to

Walden in the Valuation Guaranty and sale price to the buyers. The Nicholases sold Walden to Hill and Macauley for $619,000 which left a difference of $439,097.08.

By letter dated December 11, 2006, Attorney McBride responded and asserted that he received the original letter on November 21, 2006, but he did not recall if he had an opportunity to open it on November 21, and then he traveled to California the next day for Thanksgiving. Attorney McBride also asserted that there was a lack of fair and reasonable notice as there was no reasonable opportunity for Cutler to consider the merits of the proposal relative to its right of first refusal. He also asserted that Cutler was not given ten days to consider the matter as set forth in Valuation Guaranty so that the Valuation Guaranty was not operative.

On April 25, 2007, the Nicholases commenced an action in the trial court and asserted that Cutler had failed to comply with the terms of the Valuation Guaranty and had not paid the difference plus interest between the sale price to Hill and Macauley and the value of Walden.

The trial court conducted a non-jury trial on June 17, 2014. Attorney Moyer testified that he sent the November 20, 2006 letter to Attorney McBride which contained the agreement of sale between the Nicholases and Hill and Macauley because Attorney McBride represented Cutler and "it's my understanding under the Code of Professional Conduct I'm obligated to send notices . . . to counsel when I'm aware that counsel is

representing a particular party." (Notes of testimony, 6/17/14 at 29.) In the December 1, 2006 letter to Attorney McBride, Attorney Moyer explained that he "in effect" told Attorney McBride that the sale had not yet taken place. (*Id.* at 33.)

McCleary testified regarding the listing of Walden for sale. The property was originally listed at $799,000, but the Nicholases ultimately agreed to sell Walden for $619,000. (*Id.* at 80-81.) On cross-examination, McCleary admitted that normally an establishment of a new date for a closing is executed in writing by the parties, while here, the Nicholases and Hill and Macauley agreed verbally to an extension. (*Id.* at 82-83.)

Attorney McBride testified on cross that he had represented Cutler since 1982 and that 80 to 90 percent of his work was for Cutler. (*Id.* at 89.) He admitted that he continues to represent Cutler. (*Id.* at 92.) Attorney McBride explained that in his opinion the November 21, 2006 letter was of no consequence because it did not provide the ten days required under the Valuation Guaranty for Cutler to act:

> When I familiarized myself with what was in the original package that arrived, I know that I advised The Cutler Group that it was of no consequence because I can count from one to ten. And I can understand that if we have to deliver back an agreement containing the identical terms on December 1, and it already expired by its general terms, there was nothing to do. So I made the decision no one was entitled to a phone call because no one thought they should call me to have a discussion about this.

*Id.* at 104.

On November 18, 2014, the trial court ruled in favor of the Nicholases on their breach of contract claim in the amount of $439,097.08 plus interest of $195,393.37 for a total of $634,490.45. The trial court also awarded interest in the amount of six percent per annum calculated from June 6, 2014 through November 18, 2014. The trial court construed any ambiguities in the Valuation Guaranty against Cutler because Attorney McBride, acting on behalf of Cutler, drafted the agreement. The trial court further concluded:

12. While it was arguably discourteous for counsel for the Nicholases to mail the notice triggering the right of first refusal so close to the Thanksgiving holiday, we do not find that such pre-holiday mailing, on November 20, 2006, renders the Nicholases' claims non-meritorious. We specifically find that under the facts presented, Mr. McBride was, indeed, the agent of Cutler when he received the right of first refusal notice on November 21, 2006. We further find that Cutler had in excess of ten (10) days['] notice prior to settlement, given that the actual settlement in [sic] the Walden property did not occur until fifteen (15) days later, December 6, 2006.

. . . .

16. Reviewing the surrounding circumstances, we find that the intent of this agreement was to afford Cutler sufficient and adequate notice so as to intelligently decide whether or not to exercise its right of first refusal. We find that the Nicholases sufficiently complied with their

notice obligations in providing that right to Cutler.

17. We find that [Hill and Macauley] were bona fide purchasers. Cutler has suggested that the Nicholases' delay in notification was based on the Nicholases' false assumption that [Hill and Macauley] were not bona fide purchasers until their mortgage contingency was approved. To the extent that the Nicholases' reliance on receiving such approval impacted the date on which the Nicholases provided notice to Cutler, as stated, we find that this did not constitute a material breach.

18. We do not accept Cutler's assertion that the oral extension of the settlement date between the Nicholases and the Buyers, from November 30, 2006 to December 6, 2006, was a material breach of the Third Party Agreement, amounting to a material breach of the right of first refusal provision, thereby relieving Cutler of its obligation to pay the Nicholases pursuant to the Valuation Guaranty. We believe this argument is disingenuous, as Cutler was timely informed of the settlement date change, and suffered no harm as a result thereof. Indeed, Cutler was given even more time to exercise its right of first refusal than the ten (10) days noted in the Valuation Guaranty. Cutler chose to "sit on its right."

Trial court opinion, 11/18/14 at 10-12, discussion and conclusions of law ("DCL") Nos. 12, 16-18.

The trial court also determined that Attorney McBride had an agency relationship with Cutler such that service upon Attorney McBride was service upon Cutler.

The trial court also determined that the Nicholases' mailing of notice to Cutler on November 20, 2006, sixteen days prior to the actual settlement, was an immaterial breach, even assuming it was a breach at all:

> 27. Notwithstanding the perhaps poor manners evidenced by the mailing of the notice of the bona fide purchase agreement several days prior to the Thanksgiving holiday, and Cutler's assertion that the initially proposed settlement date of November 30, 2006 should be deemed insufficient notice to it, we find that such an asserted breach, even assuming its existence, is non-material, as settlement did not occur until December 6, 2006. We find that the Nicholases substantially performed their obligations under the agreement, rendering any breach as to notice nonmaterial. Accordingly, the contract remains in effect.

*Id.* at 15, DCL No. 27 (citations omitted).

Cutler moved for post-trial relief and alleged that the trial court erred when it determined that there was a financial obligation for Cutler if it did not exercise its right of first refusal. According to Cutler, the Valuation Guaranty only imposed an obligation on Cutler if it had ten days from the date of receipt of the agreement of sale to exercise its right of first refusal and only if the Nicholases proceeded to settlement under the express terms of the agreement of sale. Because neither of these requirements occurred, Cutler argued that the trial court erred when it returned a verdict in favor of the Nicholases. Further, Cutler argued that it never received notice from the Nicholases as there was no agency relationship between it and Attorney McBride and there was no written extension to the agreement of

sale to allow the Nicholases and Hill and Macauley to extend the settlement date until December 6, 2006.

By order dated February 9, 2015, the trial court denied the motion for post-trial relief. The trial court reiterated that the alleged breach for not providing ten days' notice was not a material breach because Cutler actually had fifteen days' notice. The trial court also disagreed with Cutler's insistence that the settlement date of November 30, 2006, was one of the express terms and conditions with which

> it was required to comply if it was to exercise its right of first refusal. We do not believe that a rational interpretation of the statement contained in the Valuation Guaranty, that "all terms and provisions of the agreement delivered from Buyer back to Seller shall be identical, including any and all deposits," includes the originally specified settlement date of November 30, 2006. In arriving at our verdict in this matter, we did not consider one specific, inflexible settlement date to be a material term or import condition of the contract.

Trial court opinion, 6/18/15 at 12-13. The trial court again explained that it properly determined that Attorney McBride acted as an agent for Cutler.

Cutler raises the following issues on appeal:

> A. Did the trial court err in entering a verdict on behalf of [the Nicholases], and against [Cutler], which was contrary to the clear and unambiguous provisions of the controlling written agreement?
>
> B. Did the trial court err in not granting [Cutler's] Motion for Non-Suit as raised at trial?

> C. Did the lower court err in holding that [Cutler] was bound by any concept of agency which would vary the express terms of the written agreement which only triggered any obligation on the part of [Cutler] to [the Nicholases] following actual receipt of a written third party bona fide agreement of sale by [Cutler]?

Cutler's brief at 4.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record of if its findings are premised on an error of law.

*Rissi v. Cappella*, 918 A.2d 131, 138 (Pa.Super. 2007) (citation omitted).

Because contract interpretation is a question of law, this court's review is *de novo*, and our scope of review is plenary. *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth*, 825 A.2d 868, 871 (Pa.Super. 2007).

Initially, Cutler contends that the trial court committed an error of law when it rendered a verdict on behalf of the Nicholases that was based upon an interpretation of the Valuation Guaranty which was unsupported by the facts and was blatantly contrary to the clear and unequivocal terms of the Valuation Guaranty which were in no way ambiguous.

The Valuation Guaranty provides:

5. <u>Valuation Guaranty</u>. As to the three Subject Parcels known as Sunnewendi, Berry Brow and Walden, in the event [the Nicholases] receive[] an offer in the form of a Bona Fide Third Party Purchaser Executed Agreement of Sale to convey one or all of the three (3) buildings situate thereon to a Bona Fide Third Party Purchaser, not a relative, in an arm's length transaction, within four (4) years from the date of settlement under the terms of the Agreement, if that Third Party Purchaser Executed Agreement of Sale is for a sale price less than the agreed upon fair market value as depicted upon Exhibit "C" attached hereto, [the Nicholases] shall provide a copy of that Agreement to [Cutler] and [Cutler] shall have the right of first refusal to tender an agreement back to [the Nicholases], containing the exact same terms within ten (10) days of [Cutler's] receipt from [the Nicholases] of the third party agreement. **All terms and provisions of the agreement delivered from [Cutler] back to [the Nicholases] shall be identical**, including any and all deposits.

If [Cutler] elects not to enter into an agreement as to any of the aforesaid three Subject Parcels as set forth in this paragraph, and in the event that the Subject Parcels or Parcels proceed to settlement under the terms of the agreement as proposed, then, within thirty (30) days from the date of that settlement, as between [the Nicholases] and a third party purchaser, [Cutler] shall make payment to [the Nicholases] in such amount by which the purchase price paid to [the Nicholases] by the third party purchaser is less than the valuation for the Subject Parcels as set forth in Exhibit "C" attached hereto. Provided, further, that as of the date of settlement between [the Nicholases] and [Cutler] as set forth in paragraph 4 of the Agreement, the valuations set forth on

Exhibit "C" attached hereto as to the three Subject Parcels, Sunnewendi, Berry Brow and Walden, shall increase at the rate of five (5%) percent, per annum, from the date of settlement until the date on which payment would be due from [Cutler] to [the Nicholases] as set forth hereinabove in this paragraph. By way of example, if the agreed upon valuation is $1,000,000.00 and the settlement occurs between [the Nicholases] and a third party purchaser two years from the date of settlement between [the Nicholases] and [Cutler] under the terms of the Agreement, the valuation as to that Subject Parcels shall be $1,100,000.00. If the conveyance to the third party purchaser is for consideration of $900,000.00, then the financial obligation owed from [Cutler] to [the Nicholases] hereunder would be $200,000.00.

Valuation Guaranty, 6/8/02 at 3-4, Paragraph 5 (emphasis added).

Cutler argues that under the Valuation Guaranty, the Nicholases were required to give Cutler ten days from Cutler's receipt of the agreement of sale between the Nicholases and Hill and Macauley. However, that was impossible because there were only nine days from the receipt until the scheduled closing. Cutler further argues that if the Nicholases did not address the conditions precedent, then Cutler would have owed no obligation to the Nicholases as the Nicholases would not have triggered the requisite provisions in the Valuation Guaranty that gave rise to Cutler's right of first refusal.

First, Cutler asserts that the Nicholases did not comply with the Valuation Guaranty because their attorney, Attorney Moyer, forwarded the

Agreement of Sale to Attorney McBride, Cutler's counsel, rather than to Cutler itself.

The trial court reasoned that the Nicholases did not breach the ancillary agreement when Attorney Moyer directed the Agreement of Sale to Attorney McBride.

Rule 4.2 of the Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Pa.R.P.C. 4.2.

Here, Attorney Moyer represented the Nicholases. It was well known to the Nicholases that Attorney McBride had represented Cutler for many years. Attorney McBride admitted that he had represented Cutler for many years, that most of his business was derived from Cutler, and that he rented office space in a building owned by Cutler where Cutler also was located. As an attorney, Attorney Moyer could not send the Agreement of Sale directly to Cutler under Rule of Professional Conduct 4.2. This court agrees with the trial court that the action of sending the Agreement of Sale to Attorney McBride did not void the notification of an agreement of sale.

Next, Cutler asserts that the copy of the Agreement of Sale was received by Attorney McBride on November 21, 2006, which was only nine days prior to the settlement stated in the Agreement of Sale of

November 30, 2006. Paragraph 3(D) of the Agreement of Sale provides: "Settlement to be on November 30, 2006, or before if Buyer and Seller agree." As a result, Cutler asserts that the Nicholases failed to provide Cutler with the ten days required under the Valuation Guaranty within which to exercise the right of first refusal. Further, Cutler asserts that it was precluded from delivering back to the Nicholases a viable agreement that contained the identical terms as the Agreement of Sale at the end of the ten-day period because the ten-day period ended on December 1, 2006, and the Agreement of Sale mandated settlement on November 30, 2006. Additionally, Cutler argues that Paragraph 5 of the Agreement of Sale provided:

> (A) The settlement date and all other dates and times referred to for the performance of any of the obligations of this Agreement are of the essence and are binding.
>
> . . . .
>
> (C) The settlement date is not extended by any other provision of this Agreement and may only be extended by mutual written Agreement of the parties.

Agreement of Sale, 10/30/16 at 2, Paragraph 5(A) and (C).

Further, Cutler asserts that the Agreement of Sale contained an express mortgage contingency which required receipt of a mortgage commitment no later than November 15, 2006.

Cutler asserts that the right of first refusal provision in the Valuation Guaranty with the Nicholases was clear and unambiguous such that it required a specified period of notice so that the Valuation Guaranty must be read according to its plainly expressed intent. *See Hahalyak v. A. Frost, Inc.*, 664 A.2d 545 (Pa.Super. 1995). Because Cutler or Cutler's attorney, Attorney McBride, received the Agreement of Sale on November 21, 2006, and the Agreement of Sale stated that settlement would occur on November 30, 2006, Cutler argues that it did not have ten days to exercise its right of first refusal.

> In construing the terms of a contract, a reviewing court must strive to ascertain and give effect to the intent of the parties as found in the written contract. *Dep't of Transp. V. Pennsylvania Indus. for the Blind and Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *East Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965). If contract terms are clear and unambiguous, the intent of the parties will be determined from the contract itself. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). When an ambiguity exists, it will be construed against the drafter of the contract. *Dep't. of Gen. Servs. v. Pittsburgh Bldg. Co.*, 920 A.2d 973, 989 (Pa. Cmwlth. 2007). A provision is ambiguous when it "is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Kripp*, 849 A.2d at 1163. Whether a contract is ambiguous is a question of law. *Riverwatch Condominium Owners Ass'n v. Restoration Dev. Corp.*, 980 A.2d 674 (Pa.Cmwlth. 2009).

***Clarion Slag, Inc. v. Dep't of Gen. Servs.***, 2 A.3d 765, 773 (Pa.[Cmwlth.] 2010).

The trial court concluded the contract was ambiguous and that because Cutler was the drafter of the Valuation Guaranty the contract must be construed against Cutler. Specifically, the trial court found that it was ambiguous whether the settlement date was one of the "provisions of the agreement" which would have to be identical if Cutler exercised its right of first refusal to the Agreement of Sale.

First, this court acknowledges that Cutler correctly asserts that it did not have ten days before the scheduled closing to review the agreement of sale as Cutler received notice on November 21, 2006, and the scheduled closing was on November 30, 2006. It is important to note that the Agreement of Sale was entered into by the parties at least three weeks earlier than the November 20, 2006 letter to McBride. Had Cutler reviewed the agreement of sale for ten days and attempted to exercise the right of first refusal on December 1, 2006, it would have been unable to exercise the right as the closing date would already have passed. Although the Nicholases and Hill and Macauley ultimately extended the date of closing, the extension was not executed in writing and no explicit notice was provided to Cutler. The December 1, 2016 letter from Moyer to McBride, sent on day ten of the refusal period, cannot be construed as anything more than the Nicholases informing Cutler that the right of first refusal had

expired. It was not incumbent upon Cutler to call to see if more time was available. Having not been properly given notice of a full ten-day period to exercise its right of first refusal, the Valuation Guaranty is not enforceable against Cutler.

Additionally, under the facts of this case, we disagree with the trial court's determination that the Valuation Guaranty was silent on whether the settlement date was one of the "provisions of the agreement." Clearly, the settlement date was crucial to the calculation of the ten-day right of refusal. It may well have been that Cutler did not wish to exercise its right; however, the financial implications for the Nicholases if Cutler did not do so were substantial. Finding that, the Nicholases failed to provide the required notice prior to the settlement date as set forth in the Valuation Guaranty, the right of refusal provision was never triggered, and Cutler had no obligation to the Nicholases to either exercise its refusal right or to pay the difference between the sale price and the valuation of Walden contained in the Valuation Guaranty.[2]

Order reversed.

---

[2] This court need not address appellant's remaining issues.

J. A33012/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2016